CONFORM AND RETURN

1  Steven D. Atlee (SBN: 151025)
     satlee@winston.com
2  Christian E. Dodd (SBN: 235251)
     cdodd@winston.com
3  WINSTON & STRAWN LLP
   333 S. Grand Avenue, 38th Floor
4  Los Angeles, CA  90071-1543
   Telephone:  213-615-1700
5  Facsimile:  213-615-1750

6  Attorneys for Plaintiffs
   KODIAK WAREHOUSE LLC, KODIAK
7  WAREHOUE JPM LLC, KODIAK CDO
   I, LTD., KODIAK CDO MANAGEMENT LLC,
8  AND KODIAK FUNDING LP

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  Kodiak Warehouse LLC, Kodiak
    Warehouse JPM LLC, Kodiak CDO
13  I, Ltd., Kodiak CDO Management LLC,
    and Kodiak Funding LP
14
                                        Case No. SACV08-1265 JVS (RNDx)
15           Plaintiffs,
                                        **Complaint for:**
16     vs.
                                        1. Violation of 18 U.S.C. § 77j
17  Brad A. Morrice;                    2. Violation of 15 U.S.C. § 78t;
    Patti M. Dodge; Robert K. Cole;     3. Civil Conspiracy;
18  Edward F. Gotschall;                4. Common Law Fraud;
    Jeffrey D. Goldberg                 5. Negligent Misrepresentation
19
             Defendants.               **Jury Trial Demanded**
20

# **TABLE OF CONTENTS**

Page No.

INTRODUCTION ............................................................................... 1

JURISDICTION AND VENUE ....................................................... 4

PARTIES............................................................................................ 4

    I.    Plaintiffs ................................................................................. 4

    II.   Defendants............................................................................. 5

FACTUAL ALLEGATIONS ............................................................ 8

    I.    Background on New Century's Business.............................. 8

    II.   The Kodiak Entities' Purchases of New Century Preferred
        Securities ................................................................................ 9

        A.    Background on the Kodiak Entities' Business ................ 9

        B.    Defendants Made Numerous Material Misrepresentations
            and Omissions During Negotiation of the Kodiak
            Entities' Purchases of New Century Securities ................ 10

            1.    The Negotiations for the September 2006
                Transaction ....................................................... 10

            2.    The Negotiations for the November 2006
                Transaction ....................................................... 12

        C.    Consummation of the Kodiak Entities' Purchases of New
            Century Securities.......................................................... 14

            1.    September 13, 2006 Preferred Securities Purchase
                Agreement......................................................... 14

            2.    November 16, 2006 Preferred Securities Purchase
                Agreement......................................................... 16

        D.    Unbeknownst to the Kodiak Entities, Defendants Had
            Made Critical False Statements Both Prior to and at the
            Time the Parties Were Negotiating the Two Transactions........... 18

            1.    Defendants Directed the Kodiak Entities to Rely
                 Upon Public Statements That They Knew to be
                 False ................................................................. 19

            2.    Defendants Failed to Disclose to the Kodiak
                 Entities that New Century Was Suffering a
                 Massive Liquidity Crisis................................... 20

        E.    Just Months After the Preferred Securities Purchase
            Agreements Were Executed, New Century Announced
            that it Needed to Restate Its Financial Reports.............................. 23

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

i

## TABLE OF CONTENTS (CONT'D)

Page No.

III.   The Bankruptcy Examiner's Report Confirms Extensive Financial Wrongdoing by New Century ....................................26

IV.   Defendant's Public Statements Leading Up to the Agreements Were Replete with Misrepresentations and Omissions.........................28

    A.   New Century's Financial Statements Included Misrepresentations and Omissions Regarding Some of New Century's Key Revenue Components....................................28

        1.   New Century Engaged in Significant GAAP Violations in Computing Its Repurchase Reserves ............29

        2.   New Century Engaged in Significant GAAP Violations in Calculating the Value of Its Residual Interests.................................................................30

        3.   New Century Engaged in Significant GAAP Violations in Calculating Its Allowance for Loan Losses ...................................................................31

        4.   Defendants Repeatedly Misstated the Quality of New Century's Underwriting ........................................32

        5.   New Century Failed to Maintain Adequate Internal Controls.....................................................................33

    B.   Defendants Public Misstatements And Omissions Were Material and the Kodiak Entities Justifiably Relied Upon the Misstatements and Omissions...................................................34

    C.   Defendants' Financial Misrepresentations Leading Up to the Trust Preferred Securities Agreements ...................................35

        1.   2005 First Quarter Statements ................................35

        2.   2005 Second Quarter Statements...........................41

        3.   2005 Third Quarter Statements..............................45

        4.   2005 Fourth Quarter Statements............................47

        5.   2006 First Quarter Statements ................................50

        6.   2006 Second Quarter Statements...........................53

        7.   2006 Third Quarter Statements..............................56

V.   New Century's February 7, 2007 Disclosure And Subsequent Disclosures ..............................................................................62

VI.   Defendants Acted with Scienter..................................................65

Winston & Strawn LLP<br/>333 South Grand Avenue<br/>Los Angeles, CA 90071-1543

# TABLE OF CONTENTS (CONT'D)

Page No.

CLAIMS FOR RELIEF ..................................................................... 72

    COUNT I (Against All Defendants For Violation of Section 10(b) of The Securities Exchange Act of 1934 and of Rule 10b-5 Promulgated Thereunder)................................................................. 72

    COUNT II (Against All Defendants For Violation of Section 20(a) of The Securities Exchange Act of 1934) .......................................... 73

    COUNT III Civil Conspiracy Against All Defendants ..................... 74

    COUNT IV Common Law Fraudulent Inducement Against All Defendants ................................................................................. 74

    COUNT V Negligent Misrepresentation Against All Defendants..................... 76

PRAYER FOR RELIEF ................................................................. 76

DEMAND FOR JURY TRIAL ........................................................ 77

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**INTRODUCTION**

1.     This action for securities and common law fraud, civil conspiracy, and negligent misrepresentation results from purchases by Kodiak Warehouse LLC, Kodiak Warehouse JPM LLC, Kodiak CDO Management LLC, Kodiak Funding LP and Kodiak CDO I, Ltd. (for which Kodiak CDO Management LLC serves as collateral manager) (hereinafter the "Kodiak Entities") of preferred securities issued by trusts formed by New Century Financial Corporation ("New Century" or "the Company") solely for the purpose of holding promissory notes issued by New Century.  This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. §§ 1331, 1367.

2.     The Kodiak Entities' purchases of New Century securities are the subject of Preferred Securities Purchase Agreements ("Agreements") entered into on September 13, 2006 and November 16, 2006, described fully below.  Copies of the Agreements are attached as Exhibits A and B.

3.     New Century originated, retained, purchased, sold and serviced home mortgage loans on a nationwide basis.  New Century business focused on the subprime mortgage market.  The Company offered mortgage products for borrowers who might not qualify for loans from other mortgage lenders.  Throughout 2005 and 2006, New Century and its officers and directors repeatedly made public statements representing that New Century's business and financial condition were strong.

4.     The Kodiak Entities are a group of related specialty finance entities that arrange for and invest in long-term structured financing for public and private real estate companies, real estate investment trusts, real estate operating companies, builders and developers, families with substantial real estate holdings, and corporate owners of ancillary real estate.

5.     During the summer of 2006, Defendants and certain of the Kodiak Entities began negotiations for the first of two transactions in which the Kodiak Entities purchased New Century securities.  At no point did Defendants disclose New

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   Century's dire need for additional capital or the financial and accounting manipulation
2   that created this liquidity crisis.  To the contrary, throughout negotiations, Defendants
3   represented the strength of New Century's business and financial condition, referring
4   the Kodiak Entities to New Century's public statements and financial statements filed
5   with the Securities Exchange Commission ("SEC").

6       6.      Relying on the Defendants' past public statements and statements made
7   during negotiations regarding New Century's robust financial condition, the Kodiak
8   Entities invested $85 million in the purchase of New Century Trust Preferred
9   Securities.  The first transaction was consummated on September 13, 2006 in which
10  one of the Kodiak Entities purchased $50 million in New Century securities.  The
11  second similarly structured transaction was consummated on November 16, 2006, in
12  which one of the Kodiak Entities purchased $35 million in New Century securities.

13      7.      On February 7, 2007, less than three months after the consummation of
14  the second transaction, New Century disclosed that it would restate its previously
15  reported financial statements for the first three quarters of fiscal year 2006 because
16  New Century had materially violated Generally Accepted Accounting Principles
17  ("GAAP").  On April 2, 2007, New Century announced that it had filed a voluntary
18  petition for relief under Chapter 11 of the United States Bankruptcy Code.  On May
19  24, 2007, New Century acknowledged further errors and admitted that it was likely to
20  restate its 2005 financial statements.

21      8.      Following New Century's announcement of its impending restatement for
22  the first three quarters of 2006, the United States Bankruptcy Court for the District of
23  Delaware ordered an Examiner to be appointed to investigate any accounting and
24  financial statement irregularities, errors or misstatements made by New Century.  On
25  February 29, 2008, the Examiner issued a report in which he concluded that New
26  Century had "engaged in a number of significant improper and imprudent practices
27  related to its loan originations, operations, accounting and financial reporting
28  processes." The Examiner specifically noted that New Century's improper accounting

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

practices in 2005 and 2006 "resulted in material misstatements of the Company's consolidated financial statements for at least the fiscal year ended December 31, 2005 and the first three quarters of 2006."

9.     Before any of these adverse disclosures were made, New Century's senior executive officers named as Defendants herein repeatedly made statements relied upon by the Kodiak Entities and signed sworn certifications attesting to the fair presentation of New Century's financial statements in accordance with GAAP and the adequacy of the Company's internal controls.  These representations were materially misleading when made as they failed to reveal New Century's financial and accounting irregularities, including but not limited to GAAP violations, material weaknesses in the Company's internal controls, and decline in loan quality.  In reliance on these misrepresentations, the Kodiak Entities purchased New Century securities.  But for Defendants' deception, Kodiak would not have entered into the September and November 2006 Agreements.

10.     Indeed, the Kodiak Entities have since learned that at the very same time Defendants were negotiating the sale of New Century securities to the Kodiak Entities in September and publicly touting New Century's financial strength, Defendants were expressing concern internally about New Century's business and financial situation. For example, the Bankruptcy Examiner's Report revealed that New Century's officers issued a press release on September 8, 2006, just a week before closing the first Kodiak deal, that stated there had only been a "modest" increase in early payment defaults from 2005 levels despite knowing (but not disclosing to the Kodiak Entities) that New Century "got our teeth kicked in with regard to repurchase requests in [August] and thus far in September."  In fact, the company had nearly two and a half times as many repurchase claims resulting from early payment defaults in just over a month as compared to all of 2005.  Yet, despite knowing the falsity of the public statement, they allowed it to be presented to the public and did not disclose this materially adverse information to the Kodiak Entities.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

11.     When New Century and Defendants could no longer hide their massive fraud and announced the need for a restatement, the price of New Century securities plummeted.    Between February 7 and March 13, 2007, common stock declined roughly 97% from over $30 per share to under $1 per share.    The price of New Century Series A and B Preferred stock dropped by over 75% during this time. Likewise, the value of the New Century trust preferred securities bought by the Kodiak Entities dropped precipitously.    Following New Century's bankruptcy announcement, the market for the trust preferred securities virtually disappeared, and the Kodiak Entities could only obtain bids for the securities at a significant discount.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. §§ 1331, 1367.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. § 1391.    Many of the false and misleading statements and/or omissions were made from or in this District and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.    New Century Financial Corporation's headquarters were located in Irvine, California at all times relevant to this action.

## PARTIES

I.      **Plaintiffs**

14.     Plaintiff Kodiak Warehouse LLC's principal place of business is situated in Arlington, Virginia.

15.     Plaintiff Kodiak Warehouse JPM LLC's principal place of business is situated in Arlington, Virginia.

16.     Plaintiff Kodiak CDO I, Ltd.'s principal place of business is situated in the Cayman Islands.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

17.     Plaintiff Kodiak CDO Management LLC's principal place of business is situated in Arlington, Virginia.

18.     Plaintiff Kodiak Funding LP's principal place of business is situated in Arlington, Virginia.

**II.     Defendants[1]**

19.     Defendant Brad A. Morrice ("Morrice") was, at all relevant times, the Company's President and Chief Executive Officer ("CEO"), a position he assumed on July 1, 2006.  As more fully described below, Defendant Morrice is responsible for material misrepresentations and/or omissions made to induce the Kodiak Entities to purchase New Century securities.

20.     Defendant Patti M. Dodge ("Dodge") was the Company's Chief Financial Officer ("CFO") until November 15, 2006, after which she assumed another position at New Century.  As more fully described below, Defendant Dodge is responsible for material misrepresentations and/or omissions made to induce the Kodiak Entities to purchase New Century securities.

21.     Defendant Robert K. Cole ("Cole") was the Company's Chairman of the Board from December 1995 through December 2006.  He was also the Company's CEO until he was replaced by Defendant Morrice on July 1, 2006.  As more fully described below, Defendant Cole is responsible for material misrepresentations and/or omissions made to induce the Kodiak Entities to purchase New Century securities.

22.     Defendant Edward F. Gotschall ("Gotschall") was the Company's Vice Chairman, Finance, of the Board of Directors from July 2004 until June 2006.  He was also Chief Financial Officer of the Company from August 1998 until July 2004 and Chief Operating Officer, Finance/Administration, from December 1995 until August 1998.  As more fully described below, Defendant Gotschall is responsible for material

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

---

[1]     New Century has not been named as a defendant in this action because it filed for bankruptcy two months after revealing that it would restate its previously reported financial statements for 2006 because of material GAAP violations.

misrepresentations and/or omissions made to induce the Kodiak Entities to purchase New Century securities.

23.     Defendant Jeffrey D. Goldberg ("Goldberg") was the Company's Vice President and Treasurer from November 2004 through June 2007. Goldberg was one of the Kodiak Entities' primary contacts at New Century during the negotiation and consummation of the Agreements and reported to Defendant Dodge. As more fully described below, Defendant Goldberg is responsible for material misrepresentations and/or omissions made to induce the Kodiak Entities to purchase New Century securities.

24.     The false, misleading and incomplete information conveyed in New Century's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of Defendants identified above. Each of the Defendants, by virtue of his or her high-level position with New Century, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest level and was privy to confidential, proprietary information concerning the Company and its business, operations, prospects, growth, finances, and financial condition as alleged herein. The Defendants were involved in drafting, producing, reviewing, approving and/or disseminating the materially false and misleading statements and information alleged herein, including SEC filings, press releases, and other publications, were aware of or recklessly disregarded that materially false or misleading statements were being issued and/or omitted regarding the Company, and approved or ratified these statements and/or omissions in violation of the federal securities laws.

25.     As officers, directors and control persons of a publicly held company whose common stock was, and is, registered with the SEC and governed by the provisions of the federal securities laws, the Defendants each had a duty to disseminate accurate and truthful information promptly with respect to New Century's financial condition and performance, growth, operations, financial statements,

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

business, earnings, management, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the price of New Century's securities would be based upon truthful and accurate information. The Defendants' misrepresentations and omissions during the relevant time period violated these specific requirements and obligations.

26.   The Defendants participated in the drafting, preparation, and/or approval of the various public and investor reports and other communications complained of herein and were aware of, or with severe recklessness disregarded, the misstatements contained therein and the omissions therefrom, and were aware of, or with severe recklessness disregarded, the materially false and misleading nature thereof. Because of their positions with New Century, each of the Defendants had access to adverse undisclosed information about New Century's business prospects, financial condition and performance as described herein and knew or recklessly disregarded that these adverse facts rendered the positive representations made by or about New Century materially false and misleading.

27.   The Defendants, because of their positions of control and authority as officers and control persons of New Century, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to New Century during the relevant time period. Defendants Cole, Morrice, Gotschall, and Dodge were provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Defendants is responsible for the accuracy of the public reports, releases, and statements detailed here in and is, therefore, primarily liable for the representations contained therein.

28.   The Defendants caused, allowed and/or participated in the wrongdoing complained of herein in order to create, continue or prolong the misleading

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

appearance of New Century's strong financial condition and to induce the Kodiak Entities to purchase New Century securities.

## FACTUAL ALLEGATIONS

### I.   Background on New Century's Business

29.   New Century originated, retained, purchased, sold and serviced home mortgage loans on a nationwide basis.   New Century's business focused on the subprime mortgage market.   The Company offered mortgage products targeted at borrowers who might not qualify for a loan from other mortgage lenders.   New Century originated and purchased mortgage loans through a wholesale division and a retail division.   At one point, New Century was the second largest subprime mortgage lender in the United States, as measured by loan production volume.   At the end of 2005, New Century was the third largest subprime mortgage loan originator in the United States, with loan production volume of $51.6 billion that year.

30.   According to the Bankruptcy Examiner, New Century grew rapidly following its founding, increasing its revenue from $14,505,000 in 1996 to $1,732,567,000 in 2004.   During that same time, its number of full-time employees increased from approximately 300 to 5,200.   In 2004, the Company's Board of Directors changed the Company's corporate structure to allow it to qualify as a Real Estate Investment Trust ("REIT") for U.S. federal income tax purposes.

31.   According to the Bankruptcy Examiner, New Century continued to grow following its conversion to a REIT, and in 2005 it had 7,200 full-time employees and revenue of $2,443,098,000.   Its total assets increased tenfold from 2002 to 2005, increasing from $2.4 billion to $26.1 billion.   New Century's subprime mortgage loan originations and purchases increased nine-fold from 2001 to 2005, increasing from $6.2 billion to $56.1 billion.   The Company's main sources of revenue following its conversion to a REIT were interest income from mortgage loans held for investment or held pending sale, gains recognized from whole loan sales and securitizations structured as sales, and servicing the mortgage loans it originated and purchased.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

32.    In 2006, the subprime market began to slow, and subprime mortgage loan delinquencies and foreclosures increased as subprime borrowers began defaulting on their loans in increasing numbers.   In addition, increased interest rates negatively impacted consumer demand for mortgage products.   Despite this downswing in the market, New Century reported positive financial results during 2006.   On May 4, 2006, New Century reported "strong first quarter 2006 results highlighted by a 21% growth in earnings per share ("EPS"), a 17% increase in REIT taxable income, and 31% growth in mortgage loan production compared with the same period last year." Similarly, on August 3, 2006, New Century had second quarter net earnings of $1.81 per share, which was an 11% increase from the previous year, and stated that the results were "evidence of the strength and stability of our franchise."

33.    On November 9, 2006, New Century released financial statements that reported "operating results were solid," that loan production volume was comparable to the previous quarter, and that the Company had achieved record low loan acquisition costs.   It also noted that a higher loan delinquency rate was attributable to "normal portfolio seasoning" and that the Company was "adequately reserved for the expected higher level of loan losses."   Accompanying this financial statement as exhibits were certifications signed by Defendants Cole, Morrice, and Dodge that stated they had reviewed this quarterly report and that it did not contain any untrue statement of material fact or omit to state a material fact, and that the information contained therein fairly presented the financial condition and results of operations of New Century.

## II.    The Kodiak Entities' Purchases of New Century Preferred Securities

### A.    Background on the Kodiak Entities' Business

34.    The Kodiak Entities are made up of related specialty finance companies that arrange for and invest in innovative, long-term structured financing for public and private real estate companies, real estate investment trusts, real estate operating

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   companies, builders and developers, families with substantial real estate holdings, and

2   corporate owners of ancillary real estate.

3      35.   The Kodiak Entities invest primarily in either Trust Preferred Securities

4   and Subordinated Notes or shorter term structured loans. Securities are purchased

5   from a broad range of issuers, achieving diversification through asset type, geography,

6   issuer, size of issue and other factors. The Kodiak Entities finance their investments

7   through long-term financing vehicles such as Collateralized Debt Obligations (CDOs),

8   which minimize interest rate risk and provide matched funding.

9   **B.    Defendants Made Numerous Material Misrepresentations and Omissions During Negotiation of the Kodiak Entities' Purchases of New Century Securities**

11     **1.    The Negotiations for the September 2006 Transaction**

12     36.   The Kodiak Entities were first made aware of a possible transaction with

13   New Century through TBC Securities, LLC ("TBCS"), a company related to Kodiak

14   Funding LP, in March 2006.   At that time, the sale of New Century securities was not

15   pursued. In July 2006, New Century approached TBCS about revisiting the sale of

16   New Century securities to the Kodiak Entities.

17     37.   Throughout negotiations for the September transaction, Defendants

18   repeatedly directed the Kodiak Entities to review and rely upon New Century's press

19   releases and publicly reported financial statements. The Kodiak Entities were induced

20   to purchase New Century securities in reliance on these statements.   At no time did the

21   Kodiak Entities know that the public statements were false and would not have

22   entered into the transaction had they known.

23     38.   Defendant Goldberg was the primary contact for the Kodiak Entities

24   during negotiation of the September Agreement.     Defendant Dodge was kept

25   informed of the course of these negotiations.

26     39.   During negotiations for the September transaction, the Kodiak Entities

27   required New Century to complete a due diligence questionnaire and to provide the

28   Kodiak Entities with extensive information regarding New Century's financial

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

situation.  In response to questions posed to New Century on an August 29, 2006 due diligence questionnaire, Defendants repeatedly directed the Kodiak Entities to examine New Century's filings with the SEC, including but not limited to its 2005 Form 10-K, its Form 10-Qs for the quarters in 2006 preceding the transaction, and its annual reports and proxy statements for the previous three years.  These financial statements and related documents were filled with material misstatements and omitted material facts necessary to make the statements not misleading.  The financial statements and related documents misrepresented the financial condition of New Century and led the Kodiak Entities to erroneously believe that New Century's securities were a wise investment.

40.   In the August 29, 2006 due diligence questionnaire, both Defendants explicitly represented that the information provided was "true and correct" and acknowledged that TBCS, who acted on behalf of the Kodiak Entities, would rely on the information provided.  The due diligence questionnaire states:

> The Company represents, and the undersigned represents that to his knowledge, that the answers to the questions furnished by [New Century] in response to both Part I and Part II of this questionnaire are true and correct as of the date set forth below, except to the extent that any such answer is expressly stated to be as of a particular date set forth in a particular question. [New Century] agrees to notify TBCS and its counsel of any changes that should be made in the foregoing answers as a result of any developments that may occur.  [New Century] acknowledges that TBCS and its counsel will rely on the answers herein as part of their due diligence investigation.

41.   On or about August 30, 2006, representatives of the Kodiak Entities attended a half-day due diligence conference at New Century.  Several individuals were present on behalf of New Century, including but not limited to Defendant

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Goldberg as well as both internal and outside legal counsel for New Century. The New Century representatives, including Defendant Goldberg, failed to reveal at this meeting the massive liquidity problems, described further below, that New Century was experiencing. During this meeting, Defendant Goldberg instructed the Kodiak Entities to review New Century's public financial information, which Defendants had represented as complete and accurate.

42. As directed by Defendants, the Kodiak Entities reviewed and relied upon the numerous statements that Defendants made to the investing public in assessing the strength of New Century's financial condition, including by not limited to SEC filings and press releases dating back to 2005. As discussed further below, on September 13, 2006, the parties finalized the sale of $50 million of New Century Trust Preferred Securities to the Kodiak Entities.

### 2. The Negotiations for the November 2006 Transaction

43. Following the September transaction, the parties began negotiating for a similar second transaction. Again, Defendants directed the Kodiak Entities to review and rely upon New Century's press releases and publicly reported financial statements. The Kodiak Entities were induced to purchase New Century securities in reliance on these statements. At no time did the Kodiak Entities know that the public statements were false and would not have entered into the transaction had they known.

44. Defendant Goldberg was the primary contact for the Kodiak Entities during negotiation of the November Agreement. Defendant Dodge was kept informed of the course of these negotiations.

45. On or about September 11, 2006, the parties participated in a conference call, in which Defendant Goldberg again directed Kodiak to review New Century's public statements and filings, which included a soon to be issued press release and 10-Q reporting on financial results for the quarter ending September 30, 2006. Specifically, shortly after the conference call, New Century issued a November 2, 2006 press release reporting its third quarter results and, one week later, filed a 10-Q

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  for the quarter ending September 20, 2006.  These public statements were filled with

2  material misstatements and omitted material facts necessary to make the statements

3  not misleading.  These public statements and related documents misrepresented the

4  financial condition of New Century and led the Kodiak Entities to erroneously believe

5  that New Century's securities were a wise investment.

6      46.    As with the first transaction, the Kodiak Entities required New Century to

7  complete a due diligence questionnaire and to provide the Kodiak Entities with

8  extensive and updated information regarding New Century's financial situation.  In a

9  November 6, 2006 due diligence questionnaire, Defendants repeatedly directed the

10  Kodiak Entities to examine New Century's filings with the SEC, including but not

11  limited to its 2005 Form 10-K, its Form 10-Qs for the quarters in 2006 preceding the

12  transaction, and its annual reports and proxy statements for the previous three years.

13  These financial statements and related documents were filled with material

14  misstatements and omitted material facts necessary to make the statements not

15  misleading.  These financial statements and related documents misrepresented the

16  financial condition of New Century and led the Kodiak Entities to erroneously believe

17  that New Century's securities were a wise investment.

18      47.    In the November 6, 2006 due diligence questionnaire, Defendants

19  explicitly represented that the information provided was "true and correct" and

20  acknowledged that TBCS, who acted on behalf of the Kodiak Entities, would rely on

21  the information provided.  The due diligence questionnaire states:

22      The Company represents, and the undersigned represents that to

23      his knowledge, that the answers to the questions furnished by

24      [New Century] in response to both Part I and Part II of this

25      questionnaire are true and correct as of the date set forth below,

26      except to the extent that any such answer is expressly stated to

27      be as of a particular date set forth in a particular question.

28      [New Century] agrees to notify TBCS and its counsel of any

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

changes that should be made in the foregoing answers as a result of any developments that may occur. [New Century] acknowledges that TBCS and its counsel will rely on the answers herein as part of their due diligence investigation.

48.    During the weeks preceding the consummation of the transaction, a Kodiak Entities' representative asked Defendant Goldberg for updated information about New Century for a presentation to the Investment Committee regarding the potential deal with New Century. Defendant Goldberg provided the Kodiak Entities with information relating to projections for default and recovery rates that was premised on false information. Further, when asked to provide information regarding management changes, Defendant Goldberg directed the Kodiak Entities' representative to review recent press releases. Defendant Goldberg also informed Kodiak that CFO Patti Dodge was being reassigned to a new position within the company because she wished to spend more time with her family.

49.    As directed by Defendants, the Kodiak Entities reviewed and relied upon the numerous statements that Defendants made to the investing public in assessing the strength of New Century's financial condition.  As discussed further below, on November 16, 2006, the parties finalized the sale of $35 million of New Century Trust Preferred Securities to the Kodiak Entities.

**C.    Consummation of the Kodiak Entities' Purchases of New Century Securities**

**1.    September 13, 2006 Preferred Securities Purchase Agreement**

50.    On September 13, 2006 Kodiak Warehouse LLC, and New Century entered into a transaction whereby Kodiak Warehouse purchased $50 million of Trust Preferred Securities from New Century Capital Trust I ("Trust I"), a trust created by New Century.

51.    New Century entered into a Trust Agreement with Wells Fargo Delaware Trust Company as trustee, creating Trust I. Defendants Dodge and Morrice served as administrators of Trust I.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

52. New Century issued to Trust I a junior subordinated promissory note for $50 million with terms providing for periodic interest payments.

53. Trust I issued securities backed by the New Century promissory note. The securities were in the form of common securities which were issued to New Century, and 50,000 shares of preferred securities, having a stated liquidation value of $1,000 per share, which were sold to Kodiak Warehouse for approximately $50 million. The terms of the preferred securities provided for dividend payments to Kodiak Warehouse on substantially the same terms as the interest payments the Trust was to receive on the New Century promissory note.

54. In the September Agreement, Defendants Dodge and Morrice signed certifications that the representations and warranties of New Century and the Trust were "true and correct" as of the closing date. In Paragraph 4(ee) of the September Agreement, New Century and the Trust warranted that:

> The books, records and accounts of the Company and the Company's Subsidiaries accurately and fairly reflect, in reasonable detail, the transactions in, and dispositions of, the assets of, and the results of operations of, the Company and the Company's Subsidiaries. The Company and each of the Company's Subsidiaries maintains a system of internal accounting controls sufficient to provide reasonable assurances that (i) transactions are executed in accordance with management's general or specific authorizations, (ii) transactions are recorded as necessary to permit preparation of financial statements in accordance with GAAP and to maintain asset accountability, (iii) access to assets is permitted only in accordance with management's general or specific authorization and (iv) the recorded accountability for assets is compared with

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1            the existing assets at reasonable intervals and appropriate action

2            is taken with respect to any differences.

3 It further stated in Paragraph 4(u) of the September Agreement that New Century's

4 financial statements for the three years ending December 31, 2005 and interim

5 financial statements for the three and six months ended June 30, 2006 were "prepared

6 in accordance with GAAP consistently provided throughout the periods involved . . .

7 ." Paragraph 4(w) of the September Agreement warranted that since the dates of these

8 financial statements and interim financial statements, there has not been any

9 "Material Adverse Change."

10       55.    Kodiak Warehouse LLC subsequently transferred $21.875 million of the

11 $50 million New Century securities to Kodiak Warehouse JPM LLC.   Kodiak

12 Warehouse JPM LLC subsequently transferred that $21.875 million in New Century

13 securities to Kodiak Funding LP.   Kodiak Funding LP currently owns those New

14 Century securities.

15       56.    Kodiak Warehouse LLC transferred the remaining $28.175 million of the

16 $50 million in New Century securities to Kodiak CDO I, Ltd., who subsequently

17 transferred all rights, title and interests relating to that $28.175 million in New

18 Century securities to Kodiak CDO Management LLC.   Kodiak CDO Management

19 LLC currently owns those New Century securities.

20       **2.**      **November 16, 2006 Preferred Securities Purchase Agreement**

21       57.    On November 16, 2007, Kodiak Warehouse JPM LLC purchased $35

22 million of Trust Preferred Securities from New Century Capital Trust II ("Trust II"), a

23 trust created by New Century.

24       58.    New Century entered into a Trust Agreement with Wells Fargo Delaware

25 Trust Company as trustee, creating Trust II. Defendants Dodge and Morrice served as

26 administrators of Trust II.

27       59.    New Century issued to Trust II a junior subordinated promissory note for

28 approximately $35 million with terms providing for periodic interest payments.

60.     Trust II issued securities backed by the New Century promissory note. The securities were in the form of common securities which were issued to New Century, and 35,000 shares of preferred securities, having a stated liquidation value of $1,000 per share, which were sold to Kodiak Warehouse JPM LLC for approximately $35 million.  The terms of the preferred securities provided for dividend payments to Kodiak Warehouse on substantially the same terms as the interest payments the Trust was to receive on the New Century promissory note.

61.     In the November Agreement, Defendants Dodge and Morrice signed certifications that the representations and warranties of New Century and the Trust were "true and correct" as of the closing date.  In Paragraph 4(ee) of the November Agreement, New Century and the Trust warranted that:

> The books, records and accounts of the Company and the Company Subsidiaries accurately and fairly reflect, in reasonable detail, the transactions in, and dispositions of, the assets of, and the results of operations of, the Company and the Company Subsidiaries. The Company and each of the Company s Subsidiaries maintains a system of internal accounting controls sufficient to provide reasonable assurances that (i) transactions are executed in accordance with management' s general or specific authorizations, (ii) transactions are recorded as necessary to permit preparation of financial statements in accordance with GAAP and to maintain asset accountability, (iii) access to assets is permitted only in accordance with management' s general or specific authorization and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

It further stated in Paragraph 4(u) of the November Agreement that New Century's financial statements for the three years ending December 31, 2005 and interim financial statements for the three and six months ended June 30, 2006 were "prepared in accordance with GAAP consistently provided throughout the periods involved . . . ." Paragraph 4(w) of the November Agreement warranted that since the dates of these financial statements and interim financial statements, there has not been any "Material Adverse Change."

62. Kodiak Warehouse JPM LLC subsequently transferred the $35 million in New Century securities to Kodiak Funding LP. Kodiak Funding LP currently owns those New Century securities.

**D.    Unbeknownst to the Kodiak Entities, Defendants Had Made Critical False Statements Both Prior to and at the Time the Parties Were Negotiating the Two Transactions**

63. The Kodiak Entities entered into the transactions with New Century unaware that Defendants made numerous material false statements regarding the financial condition of New Century in the years leading up to the transactions, as described further below. The Kodiak Entities were also unaware that Defendants had made such false statements and material omissions during the very same time that the Kodiak Entities were negotiating and consummating the Agreements.

64. During the negotiations that preceded both Kodiak securities purchases, Defendant Goldberg and others verbally assured representatives of the Kodiak Entities that New Century's business was doing well, margins for loans were healthy, and indicated no serious concerns regarding early payment defaults. The Kodiak Entities relied on these assurances and were unaware that these statements were, in fact, false. In addition, the Kodiak Entities were not told of the true severity of New Century's liquidity crisis, or that the money to be spent by the Kodiak Entities on the securities was needed for loan repurchases, nor were they told prior to the November transaction that at the very time of that transaction, New Century was investigating possible serious accounting errors made by Defendant Patti Dodge in her capacity as New

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Century's CFO. These facts were intentionally hidden, misrepresented and concealed from Kodiak by Defendants because Defendants knew Kodiak would never proceed with the transactions if they knew the true facts.

### 1. Defendants Directed the Kodiak Entities to Rely Upon Public Statements That They Knew to be False

65.     Defendants Cole, Dodge, Morrice and Gotschall signed SEC filings they knew would be relied upon by investors. During negotiations and in the Agreements, Defendants Goldberg, Morrice and Dodge directed the Kodiak Entities to rely upon public statements and financial reports that they knew to be false or misleading to induce the Kodiak Entities to purchase the Trust Preferred Securities and provide New Century with much-needed capital. Further, Defendants Dodge and Morrice signed certifications in the Agreements that the representations and warranties of New Century and the Trust were "true and correct" as of the closing date, which included representations that the financial statements that Defendants directed the Kodiak Entities to rely upon were presented in accordance with GAAP and that New Century had adequate internal controls.

66.     The falsity of Defendants' statements is demonstrated by the February 7, 2007 and subsequent disclosures, described fully below, regarding New Century's need to restate its financial statements. Also, the falsity of these statements was demonstrated by internal communications within New Century that are inconsistent with the Defendants' statements to the public. For example, in a September 8, 2006 press release issued just days before the first Kodiak transaction, Morrice stated that New Century was experiencing lower early payment default and repurchase rates than many of New Century's peers, and that while there was an increase in early payment defaults from 2005 levels as a result of the macroeconomic environment, the "increase has been modest." However, a September 7, 2006 email from New Century's Executive Vice President of Secondary Marketing to Morrice and Dodge plainly demonstrates the falsity of this statement, stating that "we got our teeth kicked in with

regard to repurchase requests in Aug. and thus far in September" and attaching a Repurchase Claims Summary spreadsheet that showed a drastic increase in the number of repurchase claims resulting from early payment defaults.   Morrice responded by stating "[h]ow can we find out about this just hours after we send a positive press release about this and after sending a positive report to the Board," yet neither Morrice nor Dodge prevented the press release they knew to be false from being issued the next day.   Moreover, neither Morrice, Dodge, or anyone else at New Century informed the Kodiak Entities that the September 8, 2006 press release was false or otherwise disclosed the adverse material information contained in the September 7, 2006 email.

67.   Not only did Morrice and Dodge fail to disclose the falsity of the September 8, 2006 press release to the Kodiak Entities, they continued their deception of the Kodiak Entities by failing to correct the statement and by making even more false statements.   Indeed, just two months later on November 9, 2006, approximately a week before the second Kodiak transaction,  Defendants allowed New Century to file its 10-Q for the third quarter, knowing that it contained false financial information and even signed certifications for the 10-Q as described below.

2.   **Defendants Failed to Disclose to the Kodiak Entities that New Century Was Suffering a Massive Liquidity Crisis**

68.   Prior to entering into the security purchase transactions, Defendants were aware of significant liquidity concerns, due in part to a growing number of backlog claims and repurchases.   For example, the Bankruptcy Examiner noted that:

> Even though New Century did not maintain accurate data regarding the growing Backlog Claims, their existence was no secret.   For example, New Century's Treasurer, Jeffrey Goldberg, performed a liquidity analysis in June 2006. In doing so, he became worried about the level of repurchases,

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

which had reached $200 million in the second quarter of 2006. This was the largest volume of repurchases in at least three years. In a June 13, 2006 e-mail transmitting his liquidity analysis to [Defendant Patti] Dodge and Kenneally of the Accounting Department, Goldberg predicted that liquidity would drop to $310 million by the end of the year, which he characterized as being "at the low end of the range." He explained that the pressure on liquidity was coming from, among other sources, "a whole bunch of outstanding repurchase requests." According to Goldberg, the problem of the growing backlog of repurchase claims was a matter of "general knowledge" within the Accounting, Finance and Secondary Marketing groups. At a minimum, Goldberg's June 13, 2006 e-mail to the two senior members in the Accounting Department put them on notice that Backlog Claims existed and that someone needed to investigate to determine if they should be taken into account in the calculation of the repurchase reserve. The Examiner found no evidence that anyone in the Accounting Department undertook such an effort.

None of these material facts or concerns were disclosed to the Kodiak Entities prior to entering into the securities purchase agreements, and in fact, they were intentionally concealed from the Kodiak Entities by the Defendants, because Defendants knew that Kodiak would never proceed with the transactions if they knew the true facts.

69.     During the due diligence meeting in late August 2006 between Kodiak and New Century personnel, New Century did not reveal the extent of its massive liquidity crisis. If it had, Kodiak would not have purchased New Century securities.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

70.   Specifically, New Century did not reveal that it was experiencing a severe liquidity crisis in August 2006.  According to its Form 10-Q for the third quarter of 2006 filed on November 9, 2006, "[t]he minimum level of liquidity currently required under [New Century's] credit facilities is $134.4 million.  However, in a memorandum Morrice presented to the Company's Board on August 24, 2006, just weeks before the execution of the first Agreement with the Kodiak Entities, he stated that from June 30, 2006 to August 18, 2006, New Century's total available liquidity had dropped from $380 million to $55 million.

71.   Defendants did not reveal that the New Century Board of Directors was concerned about this liquidity crisis.  According to the Bankruptcy Examiner, in an August 25, 2006 email to other board members Frederick Forster, an independent director, stated "[t]he low liquidity event of last week is concerning.  It seems that a lot went wrong, including the correlation of risks that we sometimes think of as NOT correlated. . . . In any case a lot seems to be working against us now and we must be cautious not to put the company at risk.  Of equivalent concern is the lack of warning – this operational/liquidity challenge, from my point of view, seemed to dump upon us with no specific prior indication of a pending problem.  We seem to be living in a volatile world without terrific tools to respond constructively."

72.   In an attempt to halt this liquidity crisis and to ensure that the September and November 2006 transactions moved forward, just days after this dire email, Defendant Goldberg pushed the Kodiak Entities to complete the initial transaction on an "expedited basis" and misrepresented New Century's financial condition to the Kodiak Entities to secure the deal.

73.   Relying on these false statements, other public statements, and misrepresentations made during due diligence, the Kodiak Entities decided to proceed with the two securities purchases, providing New Century with a fraudulently obtained $85 million.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**E.     Just Months After the Preferred Securities Purchase Agreements Were Executed, New Century Announced that it Needed to Restate Its Financial Reports**

74.     On February 7, 2007, less than three months after the second New Century preferred securities purchase made by the Kodiak Entities, New Century publicly announced the need to restate previously reported financial statements for the first three quarters of 2006 based on material GAAP violations for the Allowance for Repurchase Losses and material weaknesses in internal controls. The February 7, 2007 press release stated:

> The Company establishes an allowance for repurchase losses on loans sold, which is a reserve for expenses and losses that may be incurred by the Company due to the potential repurchase of loans resulting from early-payment defaults by the underlying borrowers or based on alleged violations of representations and warranties in connection with the sale of these loans. When the Company repurchases loans, it adds the repurchased loans to its balance sheet as mortgage loans held for sale at their estimated fair values, and reduces the repurchase reserve by the amount the repurchase prices exceed the fair values. During the second and third quarters of 2006, the Company's accounting policies incorrectly applied Statement of Financial Accounting Standards No. 140 — Accounting for Transfers and Servicing of Financial Assets and Extinguishment of Liabilities. Specifically, the Company did not include the expected discount upon disposition of loans when estimating its allowance for loan repurchase losses.
>
> In addition, the Company's methodology for estimating the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

volume of repurchase claims to be included in the repurchase reserve calculation did not properly consider, in each of the first three quarters of 2006, the growing volume of repurchase claims outstanding that resulted from the increased pace of repurchase requests that occurred in 2006, compounded by the increasing length of time between the whole loan sales and the receipt and processing of the repurchase request.

In light of the pending restatements, the Company's previously filed condensed consolidated financial statements for the quarters ended March 31, June 30 and September 30, 2006 and all earnings-related press releases for those periods should no longer be relied upon.

The Company also expects that the errors leading to these restatements constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006.

While the Company is still determining the magnitude of these adjustments to its fourth quarter 2006 results, the Company expects the combined impact of the foregoing to result in a net loss for that period.

75.     On May 24, 2007, New Century filed a Form 8-K that acknowledged further "errors" and a "more likely than not" material overstatement in the Company's previously-issued 2005 financial statements with respect to "both the accounting and

reporting of loan repurchase losses and the Company's valuation of certain residual interests in securitizations:"

On February 7, 2007, New Century Financial Corporation (the "Company") filed a Form 8-K with the Securities and Exchange Commission (the "SEC") reporting that the Company's Board of Directors had concluded that the Company's previously filed interim financial statements for the quarters ended March 31, 2006, June 30, 2006, and September 30, 2006 (collectively, the "Interim Financial Statements"), should be restated to correct errors the Company discovered in its accounting and financial reporting of loan repurchase losses.

[T]he Audit Committee has determined that there were errors in the Company's previously filed annual financial statements for its fiscal year ended December 31, 2005 (the "2005 Financial Statements") with respect to both the accounting and reporting of loan repurchase losses and the Company's valuation of certain residual interests in securitizations. The Company's ability to further investigate these matters is constrained as the Company is currently in liquidation proceedings under Chapter 11 of the Bankruptcy Code. However, based upon the work performed by the Investigative Teams the Audit Committee and management believe that it is more likely than not that these errors in the aggregate resulted in a material overstatement of pretax earnings in the 2005 Financial Statements. Accordingly, on May 23, 2007, the Company's Board of Directors concluded,

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   based upon the recommendation of the Audit Committee,

2   that the 2005 Financial Statements should no longer be

3   relied upon.

4

5   76.    These public statements admitting that New Century's financial
statements were materially misleading and could not be relied upon were the first
instances in which the Kodiak Entities learned of New Century's repeated GAAP
violations and its true financial status, both of which had been concealed through
Defendants' repeated use of false and misleading material statements and omissions.
Indeed, the very financial statements that Defendants had specifically directed the
Kodiak Entities to review and rely upon were the same ones that, just a few short
months later, New Century admitted were false.    Only after this public
acknowledgement of New Century's wrongdoing, as well as the release of a thorough
and detailed Bankruptcy Examiner's report, were the Kodiak Entities made fully
aware of how severe New Century's GAAP violations and material misstatements
were.    The Kodiak Entities would not have entered into either of the preferred
securities purchase transactions had it been aware of New Century's GAAP violations
or its true financial condition.

**III.   The Bankruptcy Examiner's Report Confirms Extensive Financial
Wrongdoing by New Century**

77.    The Bankruptcy Examiner's June 1, 2007 report exhaustively detailed
extensive financial and accounting wrongdoing and poor governance by New Century
and its Senior Management.    Among the numerous instances of such wrongdoing, the
Bankruptcy Examiner noted that:

a.    "New Century had a brazen obsession with increasing loan
originations, without due regard to the risks associated with that
business strategy." The increasingly risky nature of the Company's
loan originations "created a ticking time bomb that detonated in
2007."

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

b. "New Century also made frequent exceptions to its underwriting guidelines for borrowers who might not otherwise qualify for a particular loan."

c. "Senior Management turned a blind eye to the increasing risks of New Century's loan originations and did not take appropriate steps to manage those risks."

d. "Senior Management was aware of an alarming and steady increase in early payment defaults ('EPD') on loans originated by New Century, beginning no later than mid-2004."

e. "Senior Management similarly gave inadequate attention to the increasing amounts of investor 'kickouts.'"

f. "New Century also did not invest in the necessary technologies, systems or personnel to meet its growing business and expanding challenges."

g. "New Century's Senior Management did not set an appropriate 'tone at the top.'"

h. "New Century engaged in at least seven wide-ranging improper accounting practices in 2005 and 2006, most of which were not in conformance with generally accepted principles ('GAAP'). As a whole, these practices resulted in material misstatements of the Company's consolidated financial statements for at least the fiscal year ended December 31, 2005 and the first three quarters of 2006."

78. The Bankruptcy Examiner also noted the numerous false public statements made by The Company regarding crucial financial information: "New Century made a number of false and misleading statements in its public filings, press releases and other communications. For example, New Century disclosed in its Form 10-K for 2005 and Forms 10-Q that the Company "occasionally" may repurchase

loans beyond the 90-day period after the loans were initially sold. These statements were misleading at best, as New Century knew it had a large and growing backlog of repurchase claims more than 90 days old, an important metric for those analyzing the Company's financial statements."

79. The Bankruptcy Examiner found that, as a consequence of its accounting failures, New Century understated its repurchase reserve by as much as 1000% in the third quarter of 2006, reported a profit of $63.5 million in the third quarter of 2006 when it should have reported a loss, met analysts' earnings expectations for 2005 and the first quarter of 2006 when it should have announced earnings below expectations, and reported an increase in earnings per share ("EPS") of 8% for the second quarter of 2006 as compared to the same quarter of 2005, when it should have reported at least a 40% decline in EPS.

80. The Bankruptcy Examiner also stated that Senior Management benefited from these errors. For example, he stated that Defendants Cole, Gotschall and Morrice received financial performance bonuses in 2005 that were at least 300% more than they should have been. Other officers received such bonuses that were 130% to 270% higher than appropriate.

## IV. Defendant's Public Statements Leading Up to the Agreements Were Replete with Misrepresentations and Omissions

81. Throughout the negotiation and due diligence of the Agreements, unbeknownst to the Kodiak Entities, New Century's statements about its financial condition were replete with misrepresentations and omissions. The Kodiak Entities did not, and could not, have known of New Century's true financial condition.

### A. New Century's Financial Statements Included Misrepresentations and Omissions Regarding Some of New Century's Key Revenue Components

82. During the relevant time period, the principal components of New Century's revenues were the interest income from mortgage loans held for investment or held pending sale, and gains recognized from whole loan sales and securitizations

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  structured as sales. New Century also received revenue from servicing the mortgage

2  loans it originated and purchased.

3      83.    New Century, in reporting its financial results in 2005 and 2006, made

4  numerous materially false statements and failed to disclose material facts necessary to

5  make its public statements regarding the Company and its financial performance not

6  misleading.

### 1.   New Century Engaged in Significant GAAP Violations in Computing Its Repurchase Reserves

84.    New Century's methodology of estimating repurchases was significantly flawed, and violated GAAP principles by underestimating the quantity of probable repurchases.

85.    GAAP required New Century to establish a loss reserve for potential expenses and losses related to repurchases that could be expected. New Century, in its Form 10-K for 2005, described its repurchase reserve as "the Company's estimate of the total losses expected to occur" in connection with the potential loan repurchase exposure related to loan sales, and was "considered to be adequate by management based upon the Company's evaluation of the potential exposure related to the loan sale agreements over the period of repurchase risk."

86.    New Century failed to account properly for repurchase reserves and violated GAAP in multiple respects. First, for all accounting periods up to the third quarter of 2006, New Century failed to include amounts in the repurchase reserve for Interest Recapture. Second, starting in the second quarter of 2006, New Century failed to compute the LOCOM adjustment for loans that it had already purchased but had not yet sold. Third, starting in the third quarter of 2006, New Century failed to reserve for anticipated losses on loans that would need to be repurchased in the future. Fourth, New Century greatly underestimated the quality of its loans that would need to be repurchased and failed to reserve for a large and growing backlog of repurchase claims.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

87.     The Bankruptcy Examiner stated that "[t]he magnitude of such accounting errors was significant."  He estimated that the repurchase reserve should have been approximately $17 million, rather than $5.5 million, as New Century reported in its 2005 Form 10-K.  At September 30, 2006, just weeks after the September Agreement and during negotiations for the November Agreement, the repurchase reserve should have been approximately $115.2 million, rather than $10.3 million, as reported in the Company's Form 10-Q for that quarter.

88.     As previously stated, on February 7, 2007, New Century announced that it needed to restate its earnings for the first nine months of 2006 due to GAAP violations in accounting for loan repurchase loss reserve.  New Century subsequently announced on May 24, 2007 that it was more likely than not that similar errors made the Company's 2005 financial statements unreliable.

89.     At no time did the Kodiak Entities know that New Century's accounting for its loan repurchase loss reserves was misstated or that New Century's financial statements did not comply with GAAP.  If the Kodiak Entities knew the truth about New Century's financial condition, they would not have purchased New Century securities.

### 2.     New Century Engaged in Significant GAAP Violations in Calculating the Value of Its Residual Interests

90.     As part of its business, New Century sold many of the mortgage loans it originated by packaging pools of such loans into trusts that issued securities for sale to investors.  New Century, as the sponsor of these securitizations, was paid a cash price for the pool of mortgage loans it sold to the trust, and also retained a small ownership interest in each securitization trust that was called a "residual interest."  A residual interest represented New Century's right to cash flow or assets remaining in the trust after all investors had been paid the principal and interest they were due.

91.     Serious questions about those valuations had been raised by New Century itself when it announced the need to restate its financial statements.  The Bankruptcy Examiner found that New Century relied on antiquated and flawed internally-

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

developed models to value residual interests that represented hundreds of millions of dollars of assets on New Century's books.  The Examiner also noted that New Century's residual interest valuation process "was infected by a dangerous lack of internal controls."

92.   The accuracy of New Century's models for valuing its residual interests depended heavily on key assumptions.  Yet many of those assumptions were flawed in ways that tended to result in inflated values of New Century's residual interests.  New Century's own internal analysis in February 2007 found that, when proper assumptions were applied, New Century's residual interests should have been written down by approximately $90 million from what they were valued as of September 30, 2006, just weeks after the September Agreement and during negotiations for the November Agreement.

93.   At no time did the Kodiak Entities know that New Century's valuation of its residual interests was flawed or that New Century's financial statements did not comply with GAAP.  If the Kodiak Entities knew the truth about New Century's financial condition, they would not have purchased New Century securities.

### 3.   New Century Engaged in Significant GAAP Violations in Calculating Its Allowance for Loan Losses

94.   New Century's "Allowance for Loan Losses" provided for probable and reasonably estimable losses on loans held for investment by New Century.  The Allowance for Loan Losses was one of New Century's critical accounting areas.

95.   Despite the significance of the Allowance for Loan Losses, the Company inadequately provided for its calculation in several different ways.  First, contrary to GAAP, New Century failed to properly document the methodology it used to calculate its Allowance for Loan Losses.  Second, the models New Century used to calculate its Allowance for Loan Losses were not updated to reflect trends associated with the actual performance of the Company's loan portfolio.  Third, New Century overreserved for loan losses, reflecting a significant deficiency in relevant controls and indicating the possibility of earnings manipulation.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

96.    In spite of these shortcomings, New Century repeatedly made materially false statements that it had properly reserved for the Allowance for Loan Losses.

97.    At no time did the Kodiak Entities know that New Century did not reserve for the Allowance for Loan Losses in accordance with GAAP and that New Century's financial statements did not comply with GAAP.   If the Kodiak Entities knew the truth about New Century's financial condition, they would not have purchased New Century securities.

### 4.    Defendants Repeatedly Misstated the Quality of New Century's Underwriting

98.    During 2005 and 2006 leading up to the Kodiak transactions, Defendants repeatedly stated that the credit quality of New Century's mortgages was strong and improving because New Century maintained strict underwriting controls and guidelines when, in reality, New Century's underwriting quality was declining.

99.    In and around 2005, New Century was focused on generating high volumes of loans and resulting loan sales to investors with little attention to loan quality, despite knowledge of loan quality problems.   New Century had loan origination processes in place to ensure adequate loan quality, meaning its loans met New Century's internal underwriting guidelines as well as the guidelines of the investors who purchase New Century loans.   Despite the existence of these guidelines and standards, according to the Bankruptcy Examiner, New Century's management did not devote sufficient attention to loan quality, even ignoring red flags that signaled that New Century's loan quality was in poor condition.   New Century was experiencing an increase in early payment defaults by borrowers, an indication that New Century was providing loans to unqualified borrowers.   New Century also saw an increase in defaults caused by rising interest rates which prevented borrowers from making payments (particularly on adjustable rate mortgages) and by the slowing of housing appreciation that prevented borrowers from refinancing their loans.   Also, New Century was faced with increased competition in the subprime marketing and increased its origination of high-risk products.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

COMPLAINT

100.   Moreover, the Bankruptcy Examiner reported that New Century was seeing an "alarming" rate of rejections (kickouts) of loans by investors for reasons demonstrating the loans did not meet New Century's or investors' guidelines, such as improper documentation, defective appraisals, and incorrect credit reports.   Despite awareness of these indicators of poor loan quality, New Century attempted to sell many of these rejected loans to different investors or placed the loans in New Century's own portfolio.   Loans not sold after promptly funding contributed to New Century's dire liquidity crisis.

101.   In 2005, New Century loans had higher delinquency rates than in prior years.   Although these negative loan quality trends were a frequent topic of conversation at New Century in the years leading up to 2006, Defendants continued to make statements indicating that New Century's loan quality was strong and improving.

102.   At no time did the Kodiak Entities know that New Century's loan quality was poor or declining.   If the Kodiak Entities knew the truth about New Century's financial condition, they would not have purchased New Century securities.

**5.     New Century Failed to Maintain Adequate Internal Controls**

103.   New Century was required to establish a system of internal controls over financial reporting in order to provide reasonable assurances that transactions were recorded properly so that the Company's financial statements were prepared in conformance with GAAP.   The Company, however, failed to maintain such a system of internal controls.   Instead, the Bankruptcy Examiner concluded that "deeply-rooted and long-standing failures to establish and monitor adequate internal controls over financial reporting substantially contributed to New Century's accounting errors."   In fact, the Examiner believed that weak internal controls likely contributed to the occurrence of the repurchase reserve, residual interest and other accounting errors.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

104.   At no time did the Kodiak Entities know that New Century's internal controls were inadequate.  If the Kodiak Entities knew the truth about New Century's financial condition, they would not have purchased New Century securities.

**B.    Defendants Public Misstatements And Omissions Were Material and the Kodiak Entities Justifiably Relied Upon the Misstatements and Omissions**

105.   Defendants' misstatements and omissions set forth herein were material. These misrepresentations dealt with the financial condition of New Century, as well as critical components of its business, future cash flow, and liquidity.

106.   By announcing that its financial statements needed to be restated, New Century admitted the materiality of the its statements.  New Century's failures to follow effective underwriting practices, to maintain proper internal controls, and to report GAAP-compliant 2005 and 2006 financial statements, as well as its expected net losses resulting from the necessary financial restatements, all led to harsh and foreseeable consequences for New Century and investors like the Kodiak Entities. New Century specifically directed the Kodiak purchasers to these financial statements containing material misrepresentations.

107.   Defendants' misrepresentation, omissions, concealment and failures to disclose were calculated and intended to induce the Kodiak Entities to (a) enter into securities purchase transactions into which they would not have otherwise entered, and (b) accept terms for the purchase of New Century securities which the Kodiak Entities would not have accepted had they known the true facts and circumstances.

108.   The Kodiak Entities justifiably relied upon the facts misrepresented by Defendants and upon absence of the facts misrepresented, omitted, concealed and not disclosed by Defendants.  Furthermore, Defendants were in a unique position to know these facts, to which Defendants had access and the Kodiak Entities did not.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**C.     Defendants' Financial Misrepresentations Leading Up to the Trust Preferred Securities Agreements**

109.   Prior to and during the negotiations of the September and November 2006 Agreements, Defendants made numerous material misstatements in press releases, analyst conference calls, and SEC filings which they then directed the Kodiak Entities to rely upon in evaluating the Agreements.   Those public statements are detailed below.

**1.     2005 First Quarter Statements**

110.   Defendants Cole, Morrice, Gotschall and Dodge issued a press release on May 5, 2005 reporting New Century's earnings results for the first quarter ended March 31, 2005.   The press release contained financial data that these Defendants claim reflected New Century's financial performance, assets and liabilities for the three months ended March 31, 2005 in accordance with GAAP. The press release stated:

> Delinquencies and losses in the company's mortgage loan portfolio continue to significantly outperform securitizations executed prior to 2003 due primarily to higher credit quality, the strength of our servicing platform and improved underwriting controls and appraisal review process. Delinquency rates and cumulative loss experience for the portfolio are trending better than previously anticipated.

In the press release, Defendant Cole stated that "[o]ur first quarter 2005 results provide a solid foundation to deliver record financial results for fiscal 2005 despite a competitive marketplace and rising interest rate environment. We are very pleased that our first quarter REIT taxable income fully covers the first quarter dividend and confirms the strength of our REIT portfolio."

111.   Also on May 5, 2005, some of the Defendants held a conference call with analysts and investors. During this call, Defendants Cole and Dodge reviewed the Company's reported financial results for the first quarter of calendar year 2005.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

35

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  Defendant Cole said the Company's areas of "primary emphasis" are "cost savings
2  initiatives; continued maintenance of our strong credit quality, which is proving out in
3  portfolio performance; and our loan servicing practices, which are keeping balance
4  loans with low delinquencies and low losses. Those three areas — cost, credit, and
5  servicing — are control business functions that we think are very core to the
6  contributors of long-term profitability, portfolio performance and dividend growth.
7  And we can control those areas, and I think you'll see from first quarter into April
8  [2005] how we are doing on those three matters."

9       112.   Also during that analyst conference call, Defendant Cole stated that
10 "[e]arnings were higher [than] expected due to portfolio losses [that] continued to be
11 lower than expected. As we have been mentioning in prior calls, the delinquency and
12 the loss performance in both our REIT and our taxable sub-portfolios just continues to
13 be better than anticipated."   While discussing 60+ day delinquency rates for New
14 Century's 2003 and 2004 loans, Defendant Dodge directed the participants to "[n]ote
15 the dramatically lower delinquency rates for the 2003 and 2004 vintages, which are
16 vintages that are on our balance sheet. This performance reflects a number of factors,
17 including the credit quality of the loans, the impact of servicing the loans on our own
18 platform, and the economic and interest rate environment."

19      113.   Defendants Cole, Morrice, Gotschall and Dodge filed the Company's
20 Form 10-Q for the quarter ended March 31, 2005 on May 10, 2005. This Form 10-Q
21 contained consolidated balance sheets and consolidated statements of earnings
22 allegedly reflecting the Company's financial performance, assets and liabilities for the
23 three months ended March 31, 2005 in accordance with GAAP. The Form 10-Q
24 stated:

25           The Company has prepared the accompanying unaudited
26           condensed consolidated financial statements in accordance
27           with accounting principles generally accepted in the United
28           States of America for interim financial information and with the

instructions to Form 10-Q and Rule 10-01 of Regulation S-X. Accordingly, they do not include all of the information and footnotes required by generally accepted accounting principles for complete financial statements. In the opinion of management, all adjustments (consisting of normal recurring accruals) considered necessary for a fair presentation have been included.

The 10-Q for the first quarter was signed by Defendants Cole, Morrice, Gotschall and Dodge.

114. The 10-Q for the first quarter of 2005 stated that New Century's internal controls and procedures were "effective":

As of March 31, 2005, the end of our first quarter, our management, including our Chief Executive Officer, Vice Chairman — Finance, Chief Financial Officer and President and Chief Operating Officer, has evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended. Based on that evaluation, our Chief Executive Officer, Vice Chairman — Finance, Chief Financial Officer and President and Chief Operating Officer concluded, as of March 31, 2005, that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms. There was no change in our internal control over financial reporting during

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    the quarter ended March 31, 2005 that materially affected, or

2    is reasonably likely to materially affect, our internal control

3    over financial reporting.

4

5    115.   The 10-Q for the first quarter or 2005 included as exhibits certifications
that were signed by Defendants Cole, Morrice, Gotschall and Dodge which stated:

6

7        1.     I have reviewed this quarterly report on Form 10-Q of

8        New Century Financial Corporation;

9

10       2.     Based on my knowledge, this report does not contain

11       any  untrue statement of a material fact or omit to state a

12       material fact necessary to make the statements made, in light

13       of the circumstances under which such statements were

14       made, not misleading with respect to the period covered by

15       this report;

16

17       3.     Based on my knowledge, the financial statements, and

18       other financial information included in this report, fairly

19       present in all  material respects the financial condition,

20       results of operations and  cash flows of the registrant as of,

21       and for, the periods presented in this  report;

22

23       4.     The registrant's other certifying officers and I are

24       responsible for establishing and maintaining disclosure

25       controls and procedures (as defined in Exchange Act Rules

26       13a-15(e) and 15d-15(e)) and internal control over financial

27       reporting (as defined in Exchange Act Rules 13a-15(f) and

28       15(d)-15(0) for the registrant and have:

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over

COMPLAINT

financial reporting; and

5.     The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)     all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)     any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

*     *     *

In connection with the Quarterly Report of New Century Financial Corporation (the "Company") on Form 10-Q for the period ended March 31, 2005 as tiled with the Securities and Exchange Commission on the date hereof (the "Report"), I . . . certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

(1)    The Report fully complies with the requirements of section 13(a) or 15 (d) of the Securities Exchange Act of 1934; and

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

116.    The statements described above from the Defendants' press release, conference call and Form 10-Q for the first quarter ended March 31, 2005 were materially misstated and omitted to state material facts necessary to make the statements not misleading. Defendants' statements did not disclose the true financial condition of New Century, including that New Century's financial statements for the first quarter ended March 31, 2005 were not presented in accordance with GAAP, the Company's internal controls suffered from material weaknesses, and New Century did not improve its underwriting controls.

117.    The Bankruptcy Examiner found that New Century engaged in at least seven wide-ranging improper accounting practices in 2005 and 2006, most of which were not in conformance with GAAP, which led to material misstatements of the Company's consolidated financial statements.  The Bankruptcy Examiner also found that New Century made frequent exceptions to its underwriting guidelines and that management ignored increasing risks of the Company's loan originations.

## 2.    2005 Second Quarter Statements

118.    Defendants Cole, Morrice, Gotschall and Dodge issued a press release on August 4, 2005 reporting New Century's earnings results for the second quarter ended June 30, 2005.  The press release contained financial data allegedly reflecting the New Century's financial performance, assets and liabilities for the three months and six months ended June 30, 2005 in accordance with GAAP.   In the press release, Defendant Cole stated that "[i]n today's challenging environment, we are very pleased

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

to report a strong second quarter 2005 delivering EPS of $1.65, an 11.5 percent increase compared with $1.48 for the first quarter of this year. Our strong results reflect the earnings power of our REIT portfolio and our ability to significantly reduce our loan acquisition costs. We are pleased that the losses in our REIT portfolio are lower than expected."

119.  Also on August 4, 2005, during a conference call with analysts and investors, Defendants Cole and Dodge reviewed the Company's reported financial results for the second quarter of 2005.  Defendant Cole stated, "[o]n a very positive note, our REIT portfolio continues to perform better than expected measured by delinquencies and losses. We're very proud of the strict underwriting guidelines, the risk management discipline that we have."

120.  Also on the conference call with analysts, Defendant Cole said "we'll continue to grow the loan portfolio as Patti described in her comments, and we'll continue to maintain strict underwriting and risk management disciplines. I think you can see from the portfolio that we've created at the REIT, plus the performance of the taxable REIT subsidiary, which goes back more than a year-and-a-half to two years, that there is a very high quality  source of loans that go into the REIT portfolio. We've maintained that we've tried to be equal in what we sell in the cash market and what we put in the portfolio, and I think from loss assumptions delivered to date, or actual losses, we're delivering on that commitment."

121.  Defendants Cole, Morrice, Gotschall and Dodge filed New Century's Form 10-Q for the quarter ended June 30, 2005 on or about August 9, 2005. The 10-Q for the second quarter of 2005 contained consolidated balance sheets and consolidated statements of earnings allegedly reflecting New Century's financial performance and assets and liabilities for the three months ended June 30, 2005 in accordance with GAAP. The 10-Q stated:

> The Company has prepared the accompanying unaudited condensed consolidated financial statements in accordance with

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

accounting principles generally accepted in the United States of America for interim financial information and with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X. Accordingly, they do not include all of the information and footnotes required by generally accepted accounting principles for complete financial statements. In the opinion of management, all adjustments (consisting of normal recurring accruals) considered necessary for a fair presentation have been included.

This 10-Q for the second quarter of 2005 was signed by Defendants Cole, Morrice, Gotschall and Dodge.

122. The 10-Q for the second quarter of 2005 stated that New Century's internal controls and procedures were "effective":

As of June 30, 2005, the end of our second quarter, our management, including our Chief Executive Officer, Vice Chairman — Finance, Chief Financial Officer and President and Chief Operating Officer, has evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended. Based on that evaluation, our Chief Executive Officer, Vice Chairman — Finance, Chief Financial Officer and President and Chief Operating Officer concluded, as of June 30, 2005, that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms.

There was no change in our internal control over financial reporting during the quarter ended June 30, 2005 that materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

123.   Certifications signed by Defendants Cole, Morrice, Gotschall and Dodge were exhibits to the 10-Q for the second quarter of 2005 in the form set forth above.

124.   During an Investor Roundtable with analysts and investors on September 6 and 7, 2005, Defendants Gotschall and Dodge discussed New Century's reported financial results and business strategy. Defendant Gotschall said that "while we know that investors are concerned about residual assets, we do book them conservatively. We've been through that before."  He stated that it was a "myth" that New Century focused "on volume and not profits" and that its loss reserves were inadequate given the "housing bubble."  Gotschall claimed that New Century was approaching the "housing bubble" conservatively, stating that "we get asked a lot, are you concerned about the housing bubble, and the answer was of course we are.  There's been so much talk about it. But more than worrying about it is how do we mitigate?  We mitigate it with as much conservatism as we can."

125.   The statements described above from the Defendants' press release, conference call, 10-Q and Investor Roundtable materially misstated and omitted material facts necessary to make the statements not misleading.   Defendants' statements did not disclose the true financial condition of New Century, including that New Century's financial statements for the second quarter were not presented in accordance with GAAP, the Company's internal controls suffered from material weaknesses and New Century did not maintain strict underwriting standards, originate high quality source of loans, or book its residual interests conservatively.

126.   The Bankruptcy Examiner found that New Century engaged in at least seven wide-ranging improper accounting practices in 2005 and 2006, most of which were not in conformance with GAAP, which led to material misstatements of the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Company's consolidated financial statements.  The Bankruptcy Examiner also found that New Century made frequent exceptions to its underwriting guidelines and that management ignored increasing risks of the Company's loan originations.

### 3.     2005 Third Quarter Statements

127.   Defendants Cole, Morrice, Gotschall and Dodge issued a press release on November 3, 2005, reporting New Century's earnings results for the third quarter ended September 30, 2005.   The press release contained financial data allegedly reflecting New Century's financial performance, assets and liabilities for the three months and nine months ended September 30, 2005 in accordance with GAAP.

128.   On November 3, 2005, during a conference call with analysts and investors, Defendants Cole and Morrice reviewed the Company's reported financial results for the third quarter of 2005. During the conference call, Defendant Morrice presented a slide that he stated illustrated "the strong loan performance of our portfolio."  Later during this same call, Defendant Morrice stated that "we have not seen any meaningful spike in first payment defaults, certainly something we track carefully, but at this point that has not been our experience." Defendant Dodge agreed with Morrice, stating that first payment defaults were "very modest over the last 12 months."

129.   Defendants Cole, Morrice, Gotschall and Dodge filed New Century's 10-Q for the quarter ended September 30, 2005 on or about November 9, 2005. The 10-Q for the third quarter of 2005 contained consolidated balance sheets and consolidated statements of earnings allegedly reflecting the Company's financial performance, assets and liabilities for the three months ended September 30, 2005 in accordance with GAAP. The 10-Q stated:

> The Company has prepared the accompanying unaudited condensed  consolidated financial statements in accordance with accounting principles generally accepted in the United

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

States of America for interim financial information and with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X. Accordingly, they do not include all of the information and footnotes required by generally accepted accounting principles for complete financial statements. In the opinion of management, all adjustments (consisting of normal recurring accruals) considered necessary for a fair presentation have been included.

The 10-Q for the third quarter of 2005 was signed by Defendants Cole, Morrice, Gotschall and Dodge.

130. The 10-Q for the third quarter of 2005 stated that New Century's internal controls and procedures were "effective":

As of September 30, 2005, the end of our third quarter, our management, including our Chief Executive Officer, Vice Chairman — Finance, Chief Financial Officer and President and Chief Operating Officer, has evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended. Based on that evaluation, our Chief Executive Officer, Vice Chairman — Finance, Chief Financial Officer and President and Chief Operating Officer concluded, as of September 30, 2005, that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms. There was no change in our internal control over financial

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

reporting during the quarter ended September 30, 2005 that
materially affected, or is reasonably likely to materially affect,
our internal control over financial reporting.

131.    Certifications signed by Defendants Cole, Morrice, Gotschall and Dodge
were exhibits to the 10-Q for the third quarter of 2005 in the form set forth above.

132.    The statements described above from the Defendants' press release,
conference call and 10-Q materially misstated and omitted material facts necessary to
make the statements not misleading.  Defendants' statements did not disclose the true
financial condition of New Century, including that New Century's financial
statements for the third quarter of 2005 were not presented in accordance with GAAP,
the Company's internal controls suffered from material weaknesses and New
Century's underwriting practices and loan quality were far worse than described.

133.    The Bankruptcy Examiner found that New Century engaged in at least
seven wide-ranging improper accounting practices in 2005 and 2006, most of which
were not in conformance with GAAP, which led to material misstatements of the
Company's consolidated financial statements.  The Bankruptcy Examiner also found
that New Century made frequent exceptions to its underwriting guidelines and that
management ignored increasing risks of the Company's loan originations.

### 4.    2005 Fourth Quarter Statements

134.    Defendants Cole, Morrice, Gotschall and Dodge issued a press release on
February 2, 2006 reporting New Century's earnings results for the fourth quarter and
year ended December 31, 2005.  The press release contained financial data allegedly
reflecting New Century's financial performance, assets and liabilities for the three
months and the year ended December 31, 2005 in accordance with GAAP.  The press
release also contained the following statement from Defendant Cole:

During a year of rising interest rates, intense competition and a
challenging secondary market, we delivered record loan
production, reduced loan acquisition costs to a historic low,

47

grew our REIT portfolio of mortgage loans to $13.9 billion, and completed a strategic acquisition that broadened our product offerings and marketing channels. All of these accomplishments were achieved while delivering four consecutive dividend increases.

135. Also on February 2, 2006, during a conference call with analysts and investors, Defendants Cole, Dodge and Morrice reviewed the Company's reported financial results for the fourth quarter of 2005, as well as for the entire year. During the conference call, Defendant Cole stated that "our 60-plus-day delinquency rate was 3.36 at the REITs portfolio and 4.10 at the TRS which are both significantly lower than anticipated, indicating the good quality of loans and the great performance of those assets." Defendant Dodge, during the same conference call, stated that "[a] strong housing market has certainly contributed to our performance but we have also benefited from our strong credit and underwriting standards and servicing platform."

136. Defendants Cole, Morrice, Gotschall and Dodge filed New Century's 10-K for the quarter and year ended December 31, 2005 on March 16, 2006. The 10-K for 2005 contained financial data allegedly reflecting New Century's financial performance, assets and liabilities for the three months and year ended December 31, 2005 in accordance with GAAP. Regarding New Century's underwriting standards, the 10-K for 2005 stated:

Our loan origination standards and procedures are designed to produce high quality loans. These standards and procedures encompass underwriter qualifications and authority levels, appraisal review requirements, fraud prevention, funds disbursement controls, training of our employees and ongoing review of our employees' work. We help to ensure that our origination standards are met by employing accomplished and seasoned managers, underwriters and processors and through

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

48

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1        the extensive use of technology. We also have a

2        comprehensive training program for the continuing

3        development of both our existing staff and new hires. In

4        addition, we employ proprietary underwriting systems in our

5        loan origination process that improve the consistency of

6        underwriting standards, assess collateral adequacy and help to

7        prevent fraud, while at the same time increasing productivity.

8 The 10-K for 2005 was signed by, among others, Defendants Cole, Morrice, Gotschall

9 and Dodge.

10      137. The 10-K for 2005 also stated that New Century's internal controls and

11 procedures were "effective":

12        As of December 31, 2005, the end of our fourth quarter, our

13        management, including our Chief Executive Officer, Vice

14        Chairman Finance, Chief Financial Officer and President and

15        Chief Operating Officer, has evaluated the effectiveness of our

16        disclosure controls and procedures, as such term is defined in

17        Rule 13a-15(e) promulgated under the Securities Exchange Act

18        of 1934, as amended. Based on that evaluation, our Chief

19        Executive Officer, Vice Chairman-Finance, Chief Financial

20        Officer and President and Chief Operating Officer concluded,

21        as of December 31, 2005, that our disclosure controls and

22        procedures were effective to ensure that information required to

23        be disclosed by us in reports that we file or submit under the

24        Securities Exchange Act of 1934 is recorded, processed,

25        summarized and reported within the time periods specified in

26        the Securities and Exchange Commission rules and forms.

27

28                  * * *

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1

2   There have not been any changes in our internal control over

3   financial reporting (as such term is defined in Rules 13a-15(f)

4   and 15d-15(f) under the Exchange Act) during the quarter to

5   which this report relates that have materially affected, or are

6   likely to materially affect, our internal control over financial

7   reporting.

8      138.   Certifications signed by Defendants Cole, Morrice, Gotschall and Dodge

9   were exhibits to the 10-K for 2005 in the form set forth above.

10     139.   The statements described above from Defendants' press release,

11  conference call and 10-K for 2005 were materially misstated and omitted to state

12  material facts necessary to make the statements not misleading.   Defendants'

13  statements did not disclose the true financial condition of New Century, including that

14  New Century's financial statements for the fourth quarter and year ended December

15  31, 2005 were not presented in accordance with GAAP, the Company's internal

16  controls suffered from material weaknesses, and New Century's underwriting

17  practices and loan quality were significantly worse than described.

18     140.   The Bankruptcy Examiner found that New Century engaged in at least

19  seven wide-ranging improper accounting practices in 2005 and 2006, most of which

20  were not in conformance with GAAP, which led to material misstatements of the

21  Company's consolidated financial statements.   The Bankruptcy Examiner also found

22  that New Century made frequent exceptions to its underwriting guidelines and that

23  management ignored increasing risks of the Company's loan originations.

24     **5.    2006 First Quarter Statements**

25     141.   Defendants Cole, Morrice and Dodge issued a press release on May 4,

26  2006 reporting the Company's earnings results for the first quarter ended March 31,

27  2006.   The press release contained financial data allegedly reflecting New Century's

28

1  financial performance, assets and liabilities for the three months ended March 31,
2  2006 in accordance with GAAP.

3       142.   On May 4, 2006, during a conference call with investors and analysts,
4  Defendants Cole, Dodge and Morrice reviewed New Century's reported financial
5  results for the first quarter of 2006.   Defendant Dodge stated that "the credit
6  performance in both delinquencies and losses is better than our historical experience
7  and continues to exceed our expectations.  This performance can be attributed to faster
8  prepayments that have occurred due to the strength of the housing market as well as
9  better credit quality and the success of our servicing platform."

10      143.   Defendants Cole, Morrice and Dodge filed New Century's 10-Q for the
11 quarter ended March 31, 2006 on May 10, 2006.  The 10-Q for the first quarter of
12 2006 contained consolidated balance sheets and consolidated statements of earnings
13 allegedly reflecting the New Century's financial performance, assets and liabilities for
14 the three months ended March 31, 2006 in accordance with GAAP. The 10-Q stated:

15           The Company has prepared the accompanying unaudited
16           condensed consolidated financial statements in accordance with
17           accounting principles generally accepted in the United States of
18           America for interim financial information and with the
19           instructions to Form 10-Q and Rule 10-01 of Regulation S-X.
20           Accordingly, they do not include all of the information and
21           footnotes required by generally accepted accounting principles
22           for complete financial statements.   In the opinion of
23           management, all adjustments (consisting of normal recurring
24           accruals) considered necessary for a fair presentation have
25           been included.

26 The 10-Q for the first quarter of 2006 was signed by Defendants Cole, Morrice and
27 Dodge.

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

51

144.   The 10-Q for the first quarter of 2006 stated that New Century's internal controls and procedures were "effective":

> As of March 31, 2006, the end of our first quarter, our management, including our Chief Executive Officer, Chief Financial Officer and President and Chief Operating Officer, has evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended.   Based on that evaluation, our Chief Executive Officer, Chief Financial Officer and President and Chief Operating Officer concluded, as of March 31, 2006, that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms. There was no change in our internal control over financial reporting during the quarter ended March 31, 2006 that materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

145.   Certifications signed by Defendants Cole, Morrice, and Dodge were exhibits to the 10-Q for the first quarter of 2006 in the form set forth above.

146.   The statements described above from the Defendants' press release, conference call and 10-Q for the first quarter of 2006 were materially misstated and omitted to state material facts necessary to make the statements not misleading. Defendants' statements did not disclose the true financial condition of New Century, including that New Century's financial statements for the first quarter were not presented in accordance with GAAP, the Company's internal controls suffered from

1   material weaknesses, and New Century's underwriting practices and loan quality were

2   significantly worse than described.

3       147.   On February 7, 2007, less than three months after the second New

4   Century preferred securities purchase made by the Kodiak Entities, New Century

5   publicly announced the need to restate previously reported financial statements for the

6   first three quarters of 2006 based on material GAAP violations for the allowance for

7   repurchase losses on loans sold.   The Bankruptcy Examiner's investigation determined

8   that New Century calculated the repurchase reserve incorrectly by not accounting for a

9   growing backlog of repurchase claims and by excluding interest that needed to be paid

10  to investors at the time of loan repurchase.   New Century stated in the February 7,

11  2007 statement that it expected the errors leading to these restatements "constitute

12  material weaknesses in its internal control over financial reporting" for 2006.   These

13  material misstatements and weaknesses were known at the time of the above described

14  statements.

15          **6.     2006 Second Quarter Statements**

16      148.   Defendants Cole, Morrice and Dodge issued a press release on August 3,

17  2006 reporting the New Century's earnings results for the second quarter ended June

18  30, 2006.   The press release contained financial data allegedly reflecting the New

19  Century's financial performance and assets and liabilities for the three months and six

20  months ended June 30, 2006 in accordance with GAAP.

21      149.   During a conference call with analysts and investors on August 3, 2006,

22  Defendants Morrice and Dodge reviewed the New Century's reported financial results

23  for the second quarter. Defendant Morrice stated that "[a]lthough we are seeing

24  delinquencies and losses trending higher, credit performance remains strong relative

25  to our modeled assumptions, and we are comfortable with our current reserve levels."

26  Dodge stated that "[i]f you compare them to historic, vintages for 2005 and 2006

27  performed still meaningfully better." She also stated:

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

[W]hile we are seeing that - a modest upward in investor due diligence and loans that we are repurchasing as a result of early payment defaults. Most of the reasons for the increase in the discounted sales is in terms of the second [trust deeds]. And the first [quarter] you might recall we did a securitization of those second [trust deeds] because the whole loan market at that time was very weak. The whole loan market for second [trust deeds] strengthened pretty meaningfully in the second quarter. And we took the opportunity to sell a pool of those loans for a price that was just barely under par. I would tell you that most of the second [trust deeds] that we originate are the 20% portion of what we call an 80/20 loan. And we generally price the combined 80/20 loan to achieve our target profit margin. So you shouldn't be concerned that if we carve out the 20% second [trust deeds] and sell that at a discount that that means that we have a particular issue with those loans. We look at the overall profitability of the combined loans.

150. Defendants Cole, Morrice and Dodge filed the New Century's 10-Q for the quarter ended June 30, 2006 on August 9, 2006. The 10-Q for the second quarter of 2006 contained consolidated balance sheets and consolidated statements of earnings allegedly reflecting New Century's financial performance, assets and liabilities for the three months ended June 30, 2006 in accordance with GAAP. The 10-Q stated:

The Company has prepared the accompanying unaudited condensed consolidated financial statements in accordance with accounting principles generally accepted in the United States of America for interim financial information and with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X. Accordingly, they do not include all of the information and

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1

2

3

4

5

> footnotes required by generally accepted accounting principles for complete financial statements. In the opinion of management, all adjustments (consisting of normal recurring accruals) considered necessary for a fair presentation have been included.

6   The 10-Q for the second quarter of 2006 was signed by Defendants Cole, Morrice and

7   Dodge.

8       151.   The 10-Q for the second quarter of 2006 stated that New Century's

9   internal controls and procedures were "effective":

> As of June 30, 2006, the end of our second quarter, our management, including our Chief Executive Officer, Chief Financial Officer and President and Chief Operating Officer, has evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended. Based on that evaluation, our Chief Executive Officer, Chief Financial Officer and President and Chief Operating Officer concluded, as of June 30, 2006, that our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms. There was no change in our internal control over financial reporting during the quarter ended June 30, 2006 that materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

152. Certifications signed by Defendants Cole, Morrice, and Dodge were exhibits to the 10-Q for the second quarter of 2006 in the form set forth above.

153. The statements described above from the Defendants' press release, conference call and 10-Q for the second quarter of 2006 were materially misstated and omitted to state material facts necessary to make the statements not misleading. Defendants' statements did not disclose New Century's true financial condition, including that New Century's financial statements for the second quarter were not presented in accordance with GAAP and that the New Century's internal controls suffered from material weaknesses.

154. On February 7, 2007, less than three months after the second New Century preferred securities purchase made by the Kodiak Entities, New Century publicly announced the need to restate previously reported financial statements for the first three quarters of 2006 based on material GAAP violations for the allowance for repurchase losses on loans sold. The Bankruptcy Examiner's investigation determined that New Century calculated the repurchase reserve incorrectly by not accounting for a growing backlog of repurchase claims and by excluding interest that needed to be paid to investors at the time of loan repurchase. New Century stated in the February 7, 2007 statement that it expected the errors leading to these restatements "constitute material weaknesses in its internal control over financial reporting" for 2006. These material misstatements and weaknesses were known at the time of the above described statements.

### 7.    2006 Third Quarter Statements

155. Defendants Cole, Morrice and Dodge issued a press release on September 8, 2006 reporting August 2006 total loan production of $5.8 billion. In the press release, Defendant Morrice stated, "We are also pleased with the quality of the loans we are originating. . . . We believe our strict underwriting guidelines, skilled risk management and servicing teams and enhanced fraud detection tools have resulted in lower early payment default and repurchase rates than many of our peers. While we

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

have seen an increase in early payment defaults from 2005 levels as a result of the macro-economic environment, the increase has been modest."

156.   Defendants Cole, Morrice and Dodge issued a press release on November 2, 2006 reporting the Company's earnings results for the third quarter ended September 30, 2006.   The press release contained financial sheet data allegedly reflecting New Century's financial performance, assets and liabilities for the three months and nine months ended September 30, 2006 in accordance with GAAP. The press release stated:

> At September 30, 2006, the allowance for losses on mortgage loans held for investment and real estate owned was $239.4 million compared with $236.5 million at June 30, 2006.  These amounts represent 1.68 percent and 1.47 percent of the unpaid principal balance of the mortgage loan portfolio, respectively. The company's 60-day-plus delinquency rate as of September 30, 2006 was 5.95 percent compared with 4.61 percent in the second quarter of 2006.  The higher delinquency rate in the third quarter was the result of normal portfolio seasoning and higher delinquencies in the 2005 and 2006 vintages compared with the 2003 and 2004 vintages.  The company planned for these higher delinquency rates and believes it is adequately reserved for the expected higher level of loan losses after giving consideration to the performance of its newer vintages.

Defendant Morrice also stated in the press release that "Excluding the hedging-related accounting charges, our operating results were solid. As expected, we maintained loan production volume at a level comparable to the previous quarter, achieved record low loan acquisition costs, and improved portfolio interest spread before the impact of hedging during the third quarter."

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

157.   During a conference call held with analysts and investors on November 2, 2006, Defendants Morrice and Dodge reviewed the Company's reported financial results for the third quarter of 2006.   During the conference call, Defendant Morrice stated:

> I also want to emphasize that we believe that many of the credit-risk management practices we employ, such as the FraudMark detection tool, various appraisal scoring tools, our risk-management practices, extensive analytics on broker and product performance, active credit administration, and our strong servicing processes, have all helped to reduce the amount of first payment default and repurchase activity that we are experiencing versus our peers.

During the call, Defendant Dodge further stated:

> Turning to the portfolio credit performance, we observed that the delinquency rates in our portfolio are increasing as the portfolio seasons. We have also observed the 2005 and 2006 vintages experiencing delinquency ramp rates that are much more comparable to what we experienced in our earlier years and certainly faster than we experienced in 2003 and 2004. Not only had we anticipated this would occur based on our expectation of a softening trend in the housing market, our loan loss allowances are based on this expectation.
>
> * * *
>
> I think I'd certainly point out that we believe that we have done, long before even the third quarter, built in our allowance for loan loss that our 2005 and 2006 vintages would perform much more comparable to our earlier

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

vintages.  So I can't speak for our competitors but if others were using more recent experience like 2003 and 2004 as the basis for their 2005 and 2006 provisions for loan losses, they might find themselves in the position you just described today.   We've been planning for those higher levels of delinquencies and losses all along.

I'd point you to a table in the press release where we show the total amount in the allowance for loan losses at the end of the quarter, and its roughly $240 million at the end of September.   And to give you some sense of how that positions us relative to what we're experiencing in losses, you can look at the level of charge-offs and get a sense that we have several years' worth of losses built up in the current allowance for loan losses.  So that ought to give you some comfort that we believe that that loan loss allowance is very fairly and adequately stated.

158.   Defendants Cole, Morrice and Dodge filed the New Century's 10-Q for the third quarter ended September 30, 2006 on November 9, 2006.  The 10-Q for the third quarter of 2006 contained consolidated balance sheets and consolidated statements of earnings allegedly reflecting New Century's financial performance, assets and liabilities for the three months ended September 30, 2006 in accordance with GAAP.  The 10-Q stated:

The Company has prepared the accompanying unaudited condensed consolidated financial statements in accordance with accounting principles generally accepted in the United States of America for interim financial information and with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X.

1  Accordingly, they do not include all of the information and
2  footnotes required by generally accepted accounting principles
3  for complete financial statements.    In the opinion of
4  management, all adjustments (consisting of normal recurring
5  accruals) considered necessary for a fair presentation have been
6  included.

7  The 10-Q for the third quarter of 2006 was signed by Defendants Cole, Morrice and
8  Dodge.

9      159.   The 10-Q for the third quarter of 2006 stated that New Century's internal
10 controls and procedures were "effective":

11  As of September 30, 2006, the end of our third quarter, our
12  management, including our Chief Executive Officer, Chief
13  Financial Officer and President and Chief Operating Officer,
14  has evaluated the effectiveness of our disclosure controls and
15  procedures, as such term is defined in Rule 13a-15(e)
16  promulgated under the Securities Exchange Act of 1934, as
17  amended.    Based on that evaluation, our Chief Executive
18  Officer, Chief Financial Officer and President and Chief
19  Operating Officer concluded, as of September 30, 2006, that
20  our disclosure controls and procedures were effective to ensure
21  that information required to be disclosed by us in reports that
22  we file or submit under the Securities Exchange Act of 1934 is
23  recorded, processed, summarized and reported within the time
24  periods specified in the Securities and Exchange Commission
25  rules and forms.    There was no change in our internal control
26  over financial reporting during the quarter ended September 30,
27  2006 that materially affected, or is reasonably likely to
28  materially affect, our internal control over financial reporting.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

160. Certifications signed by Defendants Cole, Morrice, and Dodge were exhibits to the 10-Q for the third quarter of 2006 in the form set forth above.

161. The statements described above from Defendants' press releases, conference call, and 10-Q for the third quarter of 2006 were materially misstated and omitted to state material facts required therein or necessary to make the statements contained therein not misleading. Defendants' statements did not disclose New Century's true financial condition, including that New Century's financial statements for the third quarter were not presented in accordance with GAAP, that New Century's internal controls suffered from material weaknesses, and that New Century's underwriting practices and loan quality were significantly worse than described.

162. On February 7, 2007, less than three months after the second New Century preferred securities purchase made by the Kodiak Entities, New Century publicly announced the need to restate previously reported financial statements for the first three quarters of 2006 based on material GAAP violations for the allowance for repurchase losses on loans sold. The Bankruptcy Examiner's investigation determined that New Century calculated the repurchase reserve incorrectly by not accounting for a growing backlog of repurchase claims and by excluding interest that needed to be paid to investors at the time of loan repurchase. New Century stated in the February 7, 2007 statement that it expected the errors leading to these restatements "constitute material weaknesses in its internal control over financial reporting" for 2006. These material misstatements and weaknesses were known at the time of the above described statements.

163. In negotiations for both the September and November Agreements, the Kodiak Entities were directed by Defendant Goldberg to review the materially false public statements and filings described herein, which Defendants knew to be false or recklessly disregarded the fact that they were false. The Kodiak Entities did review and rely upon such public statements in coming to the decision to enter into both

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  transactions, which they would not have done had they known such statements were

2  false and misleading.

3  **V.    New Century's February 7, 2007 Disclosure And Subsequent Disclosures**

4         164.   On February 7, 2007, New Century announced that it would restate its

5  reported financial results for the first three quarters of 2006.  The press release stated:

> The Company establishes an allowance for repurchase losses on
>
> loans sold, which is a reserve for expenses and losses that may
>
> be incurred by the Company due to the potential repurchase of
>
> loans resulting from early-payment defaults by the underlying
>
> borrowers or based on alleged violations of representations and
>
> warranties in connection with the sale of these loans.  When the
>
> Company repurchases loans, it adds the repurchased loans to its
>
> balance sheet as mortgage loans held for sale at their estimated
>
> fair values, and reduces the repurchase reserve by the amount
>
> the repurchase prices exceed the fair values.  During the second
>
> and third quarters of 2006, the Company's accounting policies
>
> incorrectly applied Statement of Financial Accounting
>
> Standards No. 140 — Accounting for Transfers and Servicing
>
> of Financial Assets and Extinguishment of Liabilities.
>
> Specifically, the   Company did not include the expected
>
> discount upon disposition of loans when estimating its
>
> allowance for loan repurchase losses.
>
> In addition, the Company's methodology for estimating the
>
> volume of repurchase claims to be included in the repurchase
>
> reserve calculation did not properly consider, in each of the first
>
> three quarters of 2006, the growing volume of repurchase
>
> claims outstanding that resulted from the increased pace of

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

repurchase requests that occurred in 2006, compounded by the increasing length of time between the whole loan sales and the receipt and processing of the repurchase request.

\* \* \*

Although the Company's full review of the legal, accounting and tax impact of the restatements is ongoing, at this time the Company expects that, once restated, its net earnings for each of the first three quarters of 2006 will be reduced.

In light of the pending restatements, the Company's previously filed condensed consolidated financial statements for the quarters ended March 31, June 30 and September 30, 2006 and all earnings-related press releases for those periods should no longer be relied upon.  The Company expects to file amended Quarterly Reports on Form 10-Q for the quarters ended March 31, June 30 and September 30, 2006 as soon as practicable, with a goal to file by March 1, 2007.  The Company also expects that the errors leading to these restatements constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006.

\* \* \*

The Company's fourth quarter and full-year 2006 earnings announcement, originally scheduled for February 8, 2007, has been postponed to an undetermined future date, which will follow the Company's filing of its amended Quarterly Reports

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

on Form 10-Q for the quarters ended March 31, June 30 and September 30, 2006.

The increasing industry trend of early-payment defaults and, consequently, loan repurchases intensified in the fourth quarter of 2006. The Company continued to observe this increased trend in its early-payment default experience in the fourth quarter, and the volume of repurchased loans and repurchase claims remains high.

In addition, the Company currently expects to record a fair value adjustment to its residual interests to reflect revised prepayment, loss and discount rate assumptions with respect to the loans underlying these residual interests, based on indicative market data. While the Company is still determining the magnitude of these adjustments to its fourth quarter 2006 results, the Company expects the combined impact of the foregoing to result in a net loss for that period.

Though acknowledging that the Company expected "the errors leading to these restatements constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006," the press release stated that "the Company has taken significant steps to remediate these weaknesses and anticipates remediating them as soon as practicable." Defendant Morrice read this press release during a conference call with investors on the same day as it was issued.

165. On March 2, 2007, New Century filed with the SEC a Form 12b-25 Notification of Late Filing, which stated "As previously announced, the Company will restate its consolidated financial results for the quarters ended March 31, June 30 and

1    September 30, 2006 to correct errors the Company discovered in its accounting and

2    financial reporting of loan repurchase losses."

3        166.   The market reacted severely to these announcements.  Between February

4    7 and March 13, 2007, common stock declined roughly 97% from over $30 per share

5    to under $1 per share.   The price of New Century Series A and B Preferred stock

6    dropped by over 75% during this time.  Consistent with the market's reaction, the New

7    Century trust preferred securities purchased by the Kodiak Entities lost significant

8    value after the announcement.  Moreover, the market for the trust preferred securities

9    virtually disappeared, with the Kodiak Entities only able to obtain bids for the

10   securities at a massive discount.

11       167.   On April 2, 2007, New Century announced that it had filed a voluntary

12   petition for relief under Chapter 11 of the United States Bankruptcy Code.

## VI.   Defendants Acted with Scienter

14       168.   At all relevant times, Defendants Cole, Morrice, Gotschall, Goldberg and

15   Dodge acted with scienter in making materially false and misleading statements.

16   Defendants acted knowingly and willfully in misrepresenting, omitting, concealing,

17   and failing to disclose the aforementioned facts and circumstances to the Kodiak

18   Entities.

19       169.   Defendants knew or recklessly disregarded the fact that their statements

20   were materially false.  The following facts demonstrate that Defendants had both the

21   motive and opportunity to defraud the Kodiak Entities, that Defendants knew or

22   recklessly disregarded the truth, and made misrepresentations and omissions with the

23   intent to defraud:

24           a.   Upon information and belief, prior to the closing of the September

25              and November 2006 transactions, Defendants were aware of the

26              magnitude of the misstatement in New Century's earnings;

27           b.   Based on their positions in the Company and business experience,

28              Defendants knew or should have known the calamitous effect that

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543